IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| AVERY LAMAR MILLER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| VS. | : | 1:13-CV-131 (WLS) |
| | : | |
| WARDEN MARTY ALLEN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER AND RECOMMENDATION**

Plaintiff, who is proceeding *pro se,* brought the above-styled action pursuant to 42 U.S.C. § 1983 on August 5, 2013. (Doc. 1). Presently pending in this action are Defendant Tindell's Motion to Dismiss, Defendant Brown's Motion to Dismiss, Defendants Allen, Terrell, and Carter's Motion to Dismiss, and seven miscellaneous motions filed by Plaintiff. (Docs. 16, 19, 22, 29, 32, 37, 39, 40, 41, 55).[1]

**Background**

The Complaint alleges that Defendant Marty Allen, Warden at Autry State Prison ("ASP"), found a letter that Plaintiff wrote to non-party Governor Nathan Deal complaining about the actions of Defendant Allen and Defendant Anthony Terrell, a captain at ASP. (Doc. 1). Plaintiff contends that, as a result of Defendant Allen reading the contents of the letter, Defendants Allen and Terrell encouraged and induced an inmate to attack Plaintiff, violating Plaintiff's Eighth Amendment rights. After Plaintiff was attacked, he was allegedly placed in segregation for over 40 days as punishment, and his attacker was not punished. Plaintiff maintains that he was denied recreation time and access to legal references, and he made these concerns known to Defendant

---

[1] The undersigned has recommended that all other Defendants be dismissed from this action. As of the date of this Recommendation, the district judge assigned to this case has not ruled on the pending Report & Recommendation. (Doc. 8).

Allen.

Plaintiff also alleges that Defendant Tindell, the mental health director at ASP, was deliberately indifferent to a serious risk of harm to Plaintiff because Defendant Tindell did not take corrective actions to prevent Plaintiff from being attacked.  (Doc. 5).  Plaintiff maintains that after he was attacked he was treated by Defendant Brown, a physician's assistant at ASP. Defendant Brown allegedly acted with deliberate indifference when she allegedly misdiagnosed Plaintiff and provided him with inadequate treatment.  Plaintiff also contends that Defendant Allen Carter, a warden at ASP, placed Plaintiff in lockdown in retaliation for Plaintiff filing lawsuits and assisting prisoners with their lawsuits.  (Doc. 1).

*Motions to Dismiss (Docs. 16, 19, 22)*

Defendant Tindell filed a Motion to Dismiss stating, in part, that the claims against him should be dismissed due to Plaintiff's failure to exhaust his administrative remedies.  (Doc. 16-1). Defendant Brown filed a Motion to Dismiss contending that Plaintiff failed to state a claim upon which relief can be granted as to the claims alleged against her.  (Doc. 19-1).  Defendants Allen, Terrell, and Carter also filed a Motion to Dismiss stating, in part, that the claims alleged against them should be dismissed because Plaintiff failed to exhaust his administrative remedies.  (Doc. 22-1).  The exhaustion arguments will be addressed simultaneously.

<u>Failure to Exhaust</u>

The Prison Litigation Reform Act ("PLRA") mandates that all prisoners wishing to bring suits pursuant to § 1983 based on conditions of confinement violations must exhaust all available administrative remedies prior to filing a federal action.  The Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

2

The Eleventh Circuit has held that

> deciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process. First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

A review of the factual allegations in Defendants Tindell, Allen, Terrell, and Carter's Motions and Plaintiff's Responses reveals a conflict. In Plaintiff's Responses, Plaintiff appears to maintain that the grievance process was unavailable to him, and therefore he could not exhaust his administrative remedies. (Docs. 38, 39-1, 43, 54). Defendants Tindell, Allen, Terrell, and Carter contend that Plaintiff failed to exhaust the administrative remedies available to him regarding the claims alleged against these four Defendants. (Docs. 16-1, 22-1). Accepting Plaintiff's allegations as true, Plaintiff's claims are not subject to dismissal pursuant to the first step of the *Turner* analysis. In accordance with the second step, the Court must now make specific findings in order to resolve the disputed factual issues.

Complete administrative exhaustion is a precondition to filing a lawsuit. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "An inmate must use all steps in the administrative process and comply with any administrative deadlines and other critical procedural rules before exhaustion is proper." *Woodford*, 548 U.S. at 89-92. Prior to December 10, 2012, to remedy a prison complaint, Plaintiff was required to complete a three (3) step grievance process consisting of an informal grievance, a formal grievance, and an appeal. Georgia Dep't of Corrections SOP IIB05-001 § VI (June 2004). The grievance procedure changed on December 10, 2012, and after that date, to remedy a prison complaint, Plaintiff was required to file an original grievance and a central office

appeal.  Georgia Dep't of Corrections SPO IIB05-0001 (Dec. 2012); (Doc. 22-2).

Defendants Tindell, Allen, Terrell, and Carter contend, and support with affidavits from Letitia Bell, the grievance coordinator at ASP, that Plaintiff did not exhaust any grievances regarding the claims alleged against them.  (Docs. 16-1; 16-2, Bell Aff.; 22-1; 22-2, Bell Aff.).  The affidavit testimony establishes the presence of a grievance system at ASP, and that Plaintiff filed five grievances while housed at ASP.  (Doc. 22-2, Bell Aff.).   Defendant Tindell provided the Court with summaries of the grievances that were filed after the alleged incidents in this lawsuit took place, and Defendants Allen, Terrell, and Carter provided the Court with a copy of the grievance they maintain relates to the claims alleged against them.  (Docs. 16-4 – 16-6; 22-2, pp. 30-34).

Plaintiff filed grievance number 136860 in November of 2012 complaining that Deputy Warden Singleton was deliberately indifferent to Plaintiff's safety when he suggested that Plaintiff should resort to violence to resolve his problems.  (Docs. 16-2, Bell Aff., ¶ 10; 16-4).   This grievance was resolved, and Plaintiff did not file a formal grievance or an appeal.

 In July of 2013, Plaintiff filed grievance number 153131, wherein he alleged that he was being harassed and verbally accosted by Defendant Carter out of retaliation for Plaintiff providing inmates with legal assistance.  (Docs. 16-2, Bell Aff., ¶ 11; 16-5; 22-2 Bell Aff., ¶ 21, pp. 30-34).  Grievance 153131 was denied at the formal level, and Plaintiff did not file an appeal.  (Doc. 22-2, Bell Aff., ¶ 21).

After initiating this lawsuit, Plaintiff filed formal grievance number 160746 on November 6, 2013 complaining that he was accosted while being strip searched by Officer Adkins.  (Docs. 16-2, Bell Aff., ¶ 12; 16-6).  The formal grievance was denied, and Plaintiff's appeal was pending as of February 6, 2014, the date of Bell's affidavit.  (Doc. 16-2, Bell Aff., ¶ 12).   This grievance was not exhausted by the date Plaintiff filed this lawsuit, and this grievance does not relate to any

4

claims alleged in this lawsuit.

As shown by the above-detailed grievances, the record contains no evidence showing that Plaintiff filed grievances complaining that Defendants Terrell, Allen, or Tindell violated Plaintiff's Eighth Amendment rights, the sole claim alleged against these three Defendants. In grievance 153131, Plaintiff complained that he was being harassed and verbally accosted by Defendant Carter out of retaliation for Plaintiff providing inmates with legal assistance. However, Plaintiff did not file an appeal, and further, Plaintiff did not allow time for the jail administration to respond to grievance 153131 prior to filing this lawsuit. *See Goebert v. Lee County*, 510 F.3d 1312, 1324 (11th Cir. 2007) (administrative remedies must be exhausted at the time the legal action is brought). Therefore, Plaintiff did not exhaust any grievances complaining of the claims alleged against Defendants Tindell, Allen, Terrell, or Carter.

In his Responses to Defendants Tindell, Allen, Terrell, and Carter's Motions to Dismiss, Plaintiff appears to state that he was unable to file grievances because he was "held incommunicado for nearly thirty-five (35) days". (Docs. 38, p. 2; 43-1, p. 2). In order to demonstrate that administrative remedies are unavailable, Plaintiff must point to specific facts showing that officials prohibited or blocked his use of the grievance process. *Miller v. Tanner*, 196 F.3d 1190, 1194 (11th Cir. 1999).

Plaintiff has not provided the Court with sufficient evidence to show that as a result of being "held incommunicado" he was unable to file timely grievances against Defendants Tindell, Terrell, Carter, and Allen, or that he could not file out-of-time grievances. *See Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999) (finding an inmate who failed to seek leave to file an out-of-time grievance failed to exhaust his administrative remedies as required by the PLRA, and noting that Georgia's inmate grievance procedures allow "the grievance coordinator to waive the time period for filing a grievance if 'good cause' is shown"). Contrary to Plaintiff's assertion that

5

he could not file a grievance because he was "held incommunicado", Plaintiff was able to file at least two grievances complaining of events that occurred after Plaintiff was allegedly retaliated against by Defendants Allen and Terrell, and after Defendant Tindell was allegedly deliberately indifferent to a serious risk of harm to Plaintiff.  (*See* Doc. 1).  As Plaintiff was able to file at least two grievances after he was allegedly assaulted by an inmate at the direction of Defendants Allen and Terrell, he has failed to show that, even if he was unable to file a grievance while he was in lock-down, he could not file an out-of-time grievance regarding the alleged retaliatory actions.

Plaintiff did file an Affidavit asserting that he was dissuaded from pursuing an out-of-time grievance regarding the retaliatory conduct of Defendants Allen and Terrell because one of his grievances was resolved through intimidation.  (Doc. 54-6, ¶ 17).  However, "the exhaustion requirement is not excused merely because a plaintiff alleges that he was threatened with being beaten if he complained."  *Poole v. Rich*, 2007 WL 2238831, *3 (S.D. Ga. Aug. 1, 2007); *see Garcia v. Glover*, 197 Fed. Appx. 866, 867-68 (11th Cir. 2006) (affirming dismissal of complaint based on failure to exhaust when the plaintiff alleged that officers "'most likely' would have 'killed' him or 'shipped' him out" if they learned the plaintiff had filed a complaint).  Plaintiff's statement that he was dissuaded from filing a grievance does not excuse exhaustion.

Plaintiff's assertion that the grievance process was unavailable to him because he felt intimidated and because he was "held incommunicado for nearly thirty-five (35) days" does not persuade the Court that he was blocked from the grievance process and could not grieve the claims alleged against Defendants Tindell, Allen, Terrell, and Carter.  *See Kozuh v. Nichols*, 185 Fed. Appx. 874, 878 (11th Cir. 2006) (finding dismissal is proper when there is no evidence to support the inmate's claim that he was "thwarted" from bringing grievances or that the grievance process was unavailable); *Badger v. Parsons*, 2009 WL 2634073, *4 (S.D. Ga. Aug. 26, 2009) (determining the plaintiff's own self-serving statements that administrative remedies were

6

unavailable were insufficient to show that the grievance process was unavailable).

After review of Plaintiff's grievances, the Court finds that Plaintiff has not exhausted several of the claims underlying this lawsuit, in that, he failed to utilize the available administrative remedies to grieve the alleged offenses of Defendants Tindell, Allen, Terrell, and Carter.  Thus, it is the recommendation of the undersigned that Defendant Tindell's Motion to Dismiss be **GRANTED**, and Defendant Allen, Terrell, and Carter's Motion to Dismiss be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

*Failure to State a Claim*

Defendant Brown filed a Motion to Dismiss asserting that Plaintiff failed to state a claim upon which relief could be granted as to the claims alleged against her.  (Doc. 19).  A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level".  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

"Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  In order to show that a prison official acted with deliberate

7

indifference to a serious medical need, Plaintiff must establish that there is an "objectively serious medical need" and the "prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

To establish the objective element, Plaintiff must show that the medical need poses a substantial risk of serious harm if left unattended. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), abrogated on other grounds by *Hope v. Pelzer*, 536 U.S. 730 (2002). To establish the subjective element, Plaintiff must show that the prison official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown*, 387 F.3d at 1351.

In his Amended Complaint, Plaintiff alleges that a few days after he was assaulted he was examined by Defendant Brown. (Doc. 5). Plaintiff had complaints of dizziness, loss of equilibrium, blurred vision, and headaches. Plaintiff maintains that he informed Defendant Brown of his history of head trauma and his experiences with concussions; however, Defendant Brown insisted that Plaintiff's symptoms were caused by his medications. Plaintiff states that Defendant Brown misdiagnosed Plaintiff, and provided him with inadequate treatment. Plaintiff filed a supplement to the Amended Complaint stating that Defendant Brown failed to refer Plaintiff to a doctor for a more extensive examination, and that Defendant Brown failed to provide necessary follow-up for Plaintiff's health concerns. (Doc. 29-1). Plaintiff maintains that Defendant Brown was acting in collusion with Defendant Allen to retaliate against Plaintiff.

Deliberate indifference entails more than mere negligence, and must be more than a medical judgment call or an inadvertent failure to provide medical care. *Estelle v. Gamble*, 429 U.S. 97,

8

106 (1976); *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980).   An inmate who receives adequate medical care, but disagrees with the mode or amount of treatment has not established deliberate indifference.   *See Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991).   Medical negligence, medical malpractice, or disagreements over the method of treatment are not sufficient to state a claim of deliberate indifference.   *Simpson v. Holder*, 200 Fed. Appx. 836, 839 (11th Cir. 2006); *see also Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("a simple difference in medical opinion" does not constitute deliberate indifference).

It appears Plaintiff disagrees only with Defendant Brown's diagnosis and the amount of treatment Plaintiff received from Defendant Brown.   There is no allegation that Defendant Brown diagnosed and treated Plaintiff with "conscious or callous indifference" to Plaintiff's medical needs.   *See Smith v. Reg'l Director of Florida Dept. of Corrections*, 368 Fed. Appx. 9, 14 (11th Cir. 2010) ("a plaintiff must allege a conscious or callous indifference to a prisoner's rights").   Even if Defendant Brown provided negligent medical care, or inadvertently failed to follow up with Plaintiff, she is not liable under § 1983.   *See Simpson*, 200 Fed. Appx. at 839.   Further, there is no factual assertion that Defendant Brown was *aware* of Plaintiff's requests for medical treatment, and acted with deliberate indifference to those requests.

Additionally, Plaintiff maintains that Defendant Brown failed to treat Plaintiff out of retaliation.   (Doc. 29-1).   "For a prisoner to state a First Amendment retaliation claim under § 1983, the prisoner must establish: (1) that his speech or act was constitutionally protected; (2) that the defendant's retaliatory conduct adversely affected the protected speech; and (3) that there is a causal connection between the retaliatory actions and the adverse effect on the speech."   *Thomas v. Lawrence*, 421 Fed. Appx. 926, 928 (11th Cir. 2011) (citing *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008)).

"A prisoner's 'complaint must contain enough facts to state a claim of retaliation by prison officials that is plausible on its face.'" *Smith v. Sec.'y, Florida Dep't. of Corrections*, 358 Fed. Appx. 60, 63 (11th Cir. 2009) (quoting *Douglas*, 535 F.3d at 1321). Plaintiff alleges only that Defendant Brown's failure to act was in collusion with Defendant Allen as a further retaliatory gesture. (Doc. 29-1). However, "[t]he relevant showing . . . must be more than the prisoner's personal belief that he is the victim of retaliation." *Hempstead v. Carter*, 2006 WL 2092383 (N.D. Fla., July 26, 2006) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Plaintiff has alleged no factual assertions regarding his retaliation claim, and has provided only a conclusory statement that Defendant Brown was acting in retaliation.

Plaintiff has not shown that Defendant Brown was deliberately indifferent to Plaintiff's serious medical need. Further, Plaintiff has provided only vague, conclusory statements alleging that Defendant Brown retaliated against Plaintiff. Accordingly, Plaintiff has not stated a claim of deliberate indifference to a serious medical need or a claim of retaliation against Defendant Brown. It is, therefore, the recommendation of the undersigned that Defendant Brown's Motion to Dismiss be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendation contained herein with the Honorable W. Louis Sands, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**ORDERS**

*Motions to Supplement (Docs. 29, 39)*

Plaintiff filed "Motions to Amend" in response to Defendant Brown's and Defendant Tindell's Motions to Dismiss. The Motions provided supplemental factual assertions regarding the claims alleged against these two Defendants. The Middle District of Georgia has considered a *pro se* plaintiff's response and supplemental brief to be supplements to the plaintiff's complaint when ruling on a motion to dismiss. *See Jones v. Nicholson*, 2011 WL 2160918, *3 (M.D. Ga. 2011); *Waters v. Philbin*, 2011 WL 4043788 (M.D. Ga., Sept. 12, 2011). Plaintiff's two "Motions to Amend" do not seek to add new defendants or new claims; rather, Plaintiff is providing additional factual support for his claims against Defendants Brown and Tindell in <u>response</u> to their Motions to Dismiss. As Plaintiff is proceeding *pro se*, and as the Motions and attachments merely reiterate factual assertions and provide additional factual support for his claims against Defendants Brown and Tindell, the Court has considered both Motions and the accompanying attachments in its analysis of the Motions to Dismiss. Accordingly, the "Motions to Amend" (Doc. 29, 39), containing only supplemental information, are **GRANTED**.

*Motions to Strike (Docs. 32, 37, 40)*

Plaintiff has filed a Motion to Strike requesting the Court strike all affidavits and documentary exhibits attached to Defendants' Motions to Dismiss. (Doc. 32). Plaintiff has also moved the Court to strike "all references made or inferences drawn" from affidavits and documentary exhibits cited in Defendant Tindell's Motion to Dismiss and Brief in Support of his Motion to Dismiss. (Doc. 37). Plaintiff argues that these documents should not be considered in ruling on a Motion to Dismiss filed pursuant to Rule 12(b)(6).

Defendants Tindell, Allen, Terrell, and Carter attached documents and affidavits to support their assertions that Plaintiff's claims should be dismissed because he failed to exhaust his

11

administrative remedies, and because he has three strikes under the PLRA. (*See* Docs. 16, 22). Under the second step of the *Turner* analysis, the Court must make a factual determination regarding exhaustion. As the Court analyzed the Motions to Dismiss under the second step of *Turner*, it was proper for the Court to consider the attached affidavits and exhibits.

Further, "[b]ecause exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead it should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 503 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted). Additionally, the Court can take judicial notice of orders filed in Plaintiff's previous lawsuits, s*ee U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994), and would do so if determining whether Plaintiff had three strikes under the PLRA. As Defendants Tindell, Allen, Terrell, and Carter attached documents that were appropriate for consideration of their motions to dismiss, Plaintiff's Motions to Strike (Docs. 32, 37) are **DENIED**.

Plaintiff also filed a Motion to Strike Pleadings for Lack of Standing (Doc. 40) asserting that counsel for Defendants Allen, Terrell, and Carter lacked standing to file a response to Plaintiff's filings directed at Defendants Brown and Tindell. Counsel for these three Defendants responded to issues that could affect Defendants Allen, Terrell, and Carter (*see* Doc. 49), and thus, Plaintiff's Motion to Strike Pleadings for Lack of Standing (Doc. 40) is **DENIED.**

*Discovery Motions (Docs. 41, 55)*

On March 14, 2014, Plaintiff filed a document wherein he appears to be attempting to serve Requests for Admission on Defendants Allen, Terrell, and Carter. Counsel for these Defendants filed a Response stating that Defendants would serve their answers and objections to Plaintiff's

Request for Admissions pursuant to the applicable Rules and in accordance with this Court's February 18, 2014 Order.  (Doc. 48; *see also* Doc. 28).   Thus, the discovery portion of Plaintiff's Motion requires no ruling from the Court.

In addition, Plaintiff asks that "certain" discovery documents and responses be filed with the Court.  (Docs. 41, 55).   Under Federal Rule of Civil Procedure 5(d)(1) and Local Rule 5.1, discovery requests and responses must not be filed with the Court until the discovery is being used in the proceeding or the Court orders filing.   The Court notes that the discovery period is stayed as to all discovery, except discovery that is related to Plaintiff's exhaustion of administrative remedies.  (Doc. 28).   Pursuant to the Rules, Plaintiff does not need a Court order to file discovery documents that relate to issues that are before the Court, such as exhaustion.   Further, Plaintiff has filed several documents regarding exhaustion.   (*See* Doc. 54).   Plaintiff does not indicate how the discovery documents he now seeks to file provide additional information as to his contention that he was unable to exhaust his administrative remedies.   Accordingly, Plaintiff's Motions (Docs. 41, 55) are **DENIED**.

**SO ORDERED AND RECOMMENDED**, this 6th day of May, 2014.

s/ ***THOMAS Q. LANGSTAFF***
UNITED STATES MAGISTRATE JUDGE

llf